17-4056 Grant L. Inglis v. Huntington National Bank For argument as follows, it is unknown whether the appellant, Mr. Cycles II, will be acquitted. Good morning. How are you? Good morning, Your Honor. My name is Orval Stifel. I represent the appellant in this case. I've been before this court many, many times over the past 30 years. This is the first time I am not asking, I'm not reserving time for rebuttal. I understand. I understand. And I assure you that feeble attempt will be my last attempt at humor in this case. This case is of monumental significance to my client who has been unfairly stigmatized by a finding of criminal contempt. He is a high-minded and principled lawyer. And I want to devote my energies to discussing that with you this morning. This case originates from a federal diversity foreclosure action filed in Akron Federal Court. But it has much, much more to do with a state court case called Orbit v. Dixon that was tried in the Court of Common Pleas of Mahoning County. This court's prior cases say that you have the authority to look at the record in sister tribunals, including state court cases. These cases are cited in our brief at footnote 8 on pages 42 and 43. And with your indulgence, I would like to give you just a little bit of the background about the Orbit case because I think it will... We've got a few questions, and I think we understand the record. Very good. I think one way of thinking about the case is that we generally try to give the benefit of the doubt to the district court judge. Absolutely. They've got a difficult job. They're the ones with the ringside seat on what's going on. That's why we defer to them. I personally usually see myself as trying to construe the record in a way that supports what a district court judge has done here. And you start out by saying it's criminal contempt. That's the key point here. He says he's applying the clear and convincing evidence standard. One would assume that's because he thinks what he's doing is civil contempt. So why isn't that relevant, what the judge thinks he's doing? Why shouldn't that control how we handle the case? He says clear and convincing, and I don't think that's the only thing. But that's certainly one of the things that suggests he doesn't think it's criminal contempt. Isn't that important? First of all, the case comes out the same way whether you apply the civil contempt rules or the criminal contempt rules. But let me go right to the heart of your question.  Civil contempt is coercive in nature. It's remedial. $500 is not a big number, and you would agree $500 doesn't by itself suggest criminal contempt. The Supreme Court says $50 suggests criminal contempt, and we cite the case in our brief. Depending on other circumstances. $100,000 can be civil. It can be. If it's compensatory. Keep going. But the reason is there was nothing coercive about this thing. A civil contempt order is designed to get you to do something to comply with a prior order. There's nothing that Brent English can do in this case to comply with the orders that the judge thought that he violated. Sometimes like $1,000 a day, and as soon as you comply, then the 1,000 quits running. That's right. This is punishment issued for a prior act that the judge thought was offensive. That is criminal. That is a criminal act. I'm sorry, Your Honor. Just a one-time penalty. It doesn't accumulate or anything. Just one time. $500 because of what you did. That's what it is. And that's a criminal contempt sanction because there is nothing that Brent English can do to escape it. It is not remedial. It's not going to Huntington Bank. It isn't any payment for any past grievance against Huntington. Huntington didn't even initiate this action. They really didn't want anything to do with it, and their absence here today corroborates that. They really wanted no part of this thing. At the conclusion of the first hearing, when Judge Adams turned to them and said, How do you feel about, Judge, this is strictly between you and Mr. English over here. This does not involve us. The judge did put on an order and say, Tell me what your attorney's fees were and your expenses. And they did that. But that was in response to a direct order from Judge Adams. You don't, if this case teaches anything, is you don't trifle with Judge Adams when he gives you a direct order. So they've submitted that thing. But when we filed the first appeal, when I filed the first appeal, and it was dismissed for a lack of a final appealable order, and it went back to Judge Adams, and Judge Adams' clerk contacted Huntington and said, Do you still want to go forward with this? And they said no, and agreed with us that we could file a motion to vacate the contempt order. Well, Mr. English didn't show up for court. That's what the problem was, wasn't it? He didn't show up on two occasions. He went to another court. He was in another court, and he was obligated to be in that court. And that was a preexisting obligation. He should have contacted the judge and said, I can't be there, right? He did that many times, Your Honor. He did it over and over and over again, and that seemed only to pour more gasoline on the fire. Because Judge Adams construed that as further contumacious behavior, and all Brent was trying to do was to show him, Judge, I'm in another case. I was in this case before I was contacted by Mr. Bruno. Now, let's examine that if we can. Brent English got involved in the Orbit case at my behest. I was the trial lawyer in the Orbit case. I've worn hearing aids for 20 years, and when I turned 70, my hearing suffered a precipitous loss. I couldn't try the case. I had previously made arrangements. Okay, so I just want to ask a separate question, if that's all right. So let's say you're right that what Judge Adams did falls under the category of criminal contempt, point number one. And point number two, the procedural requirements that you'd need to check off before imposing criminal contempt haven't been met here. So let's just say you're right about those two things. I take it then the remedy is to send it back for Judge Adams to give him the benefit of the doubt. If he can't check those boxes, he can't check those boxes. But if he can, then it gets reimposed. Judge, we don't really ask for that remedy in this case because that is my worst nightmare because all that does is prolong the obvious and manifest injustice in this case. And you have before you, even though . . . I don't think it's your worst nightmare. Okay, that being aside, even though the proceedings below were procedurally flawed . . . What else can we do? I don't understand. You have a clear record in front of you that, A, Mr. English's failure to appear on October 21 is certainly excusable because there was no clear order directing him to do so. That order was put on ordering Bruno to be there on October 21. The upshot is you don't want us to send it back. What do you want us to do? If you're right . . . just to make sure you understand the question. You're right about it being criminal contempt. You're right that the procedures for imposing criminal contempt weren't satisfied. Now what . . . you get to write the opinion. It says those two things, those two things alone. What's the punchline? The punchline is vacate the order of contempt because despite all of those procedural irregularities and the fact we didn't get even more evidence in the record, there is enough evidence in the record to show that this was not willful contempt. Brent English could not appear. The third step is we rule as a matter of law that no trial judge could impose criminal contempt in this setting. That's the upshot. Yes. The judge made clear errors of law and or fact in making his ruling. And you just told us the first one is that your client could not have violated an order to be there on the 21st because there was no order for him to be there on the 21st. That is correct, Your Honor. Go to the second one then because there was an order to appear on the 29th. And that was a clear and unequivocal order. We don't argue that. He was supposed to be there. But he didn't show that time. I'm sorry, Your Honor? He didn't show on that setting. He didn't show. But he did everything he could to get there. He went to the trial judge and said, Judge, Judge Adams says I've got to be in. Well, let's back off. We may be done with trial here and it won't be an issue. And the day before, we're still in trial in Cleveland, in Cuyahoga County. He goes back to Judge McMonahan. Judge, Your Honor, I've got more orders here from Judge Adams saying I've got to be in his courtroom tomorrow morning at 10 o'clock. Judge McMonigan, could you call Judge Adams and maybe the two of you judges could work this out together? Maybe I could appear in front of Judge Adams at 8 and you won't start trial until 10. Judge McMonigan says, Fine, I'll be happy to do that. Calls Judge Adams and World War III almost breaks out. Judge Adams won't back off of his order and says to Judge McMonigan, Brent English better be in my courtroom by 10 o'clock tomorrow or I'm going to send two marshals to arrest him in your courtroom, Judge McMonigan. Where did all this come from? I mean, is this testimony by your client or is it testimony by Judge Adams or by the state judge? It comes from two sources. There is testimony from my client, Brent English, at the contempt hearing that was held in front of Judge Adams later that day after Brent was arrested and taken in marshal's custody to Judge Adams. But if Judge Adams wasn't supposed to be trying this thing, do we still have a record? Your Honor, it's not your fault. I'm old and I'm hard of hearing. Would you please repeat that? Well, I'm just saying if Judge Adams was not supposed to be trying this thing, is the evidence still before us if it was taken in his court? Yes, it is, because the record is the record. You know, you've got the record. It's under oath. Isn't it right that there's a transcript of McGonigal, there's a transcript of McGonigal at least saying what he did? Exactly. Obviously, if we're getting technical, it's hearsay as to Adams, but McGonigal does say on the transcript, here's what I did. I talked to Adams. Adams said this. I said that, right? He did. And that transcript was one of those rapidly produced transcripts on an hour's notice by the court reporter that Brent introduced as exhibits at the contempt hearing, and they are in the appendix to our brief. That's where I read them. So going back to get to the legal point, is it your argument that Adams committed legal error by finding willfulness when no reasonable finder could find willfulness given this clash of judges? That is precisely the point, Your Honor. For the 21st, you have a factual argument, clear error of fact. For the 29th, you have an error of law because no one could find willfulness. Is that a fair presentation? That is a fair presentation. I would also say that as a matter of law on the 21st, it was not only a clear error of fact. As a matter of law, the order did not apply to him. He was nowhere mentioned. That order was put on at least a month before Brent had anything to do with this case. It simply directed Bruno to appear. Brent was never mentioned, and it didn't clearly, unequivocally, and emphatically order Brent to be there. In fact, all Brent did was say, Judge, can you give Bruno a little bit of an extension of time on his hearing so that I can appear? And that motion was denied. What that means to me, what I think it reasonably means, is your motion is denied. I'm not going to let you appear. Bruno is going to go forward tomorrow. And this was not ñ I mean Bruno had been proceeding in this case on a pro se basis for more than two years, and he simply wasn't filing sophisticated legal pleadings. He had represented him orally and had done a good job on his feet in the courtroom. He had previously represented himself in a debtor's exam six or eight months before. He's been in front of this court multiple times. I mean, filing sophisticated petitions for mandamus under the All Writs Act. I mean, this guy is not your typical prisoner jailhouse lawyer. This is a sophisticated businessman who was college educated, ran several successful businesses, taught himself legal procedure. He was not bereft. He was not at all left out in the lurch by having to represent himself. He was doing that for two years. Furthermore, if there's any ruling in this case, in this constellation of orders where Judge Adams was entirely justified in doing what he did, it was in denying the motion for a continuance. As a civil litigant, you don't have a right to a lawyer. You don't have a constitutional right to a lawyer. You've got a statutory right, but that right is subject to limits, and one of them is you can't exercise that right in a way to delay the proceedings. And when you come in two days before a hearing or three days before a hearing and say, I need a continuance to get a new counsel, there's nothing wrong with the judge saying, no, you're going to go forward. That's the way everybody interpreted this order, and Bruno showed up. Bruno was scheduled for surgery. At least that was the claim he had made when he came to Brent English was, I've got to go into the hospital. When Brent English got the order saying no, he called Bruno and said, you've got to be there. I'm in trial. I'm not going to be with you, but you've got to be there, Mr. Bruno, and Bruno showed up prepared to go forward. It was Judge Adams who thought at that point, well, we can't go forward because Brent English, Bruno, the motion to substitute counsel had been denied. It was clear that Brent English was not going to be there, and there was nothing that inhibited Judge Adams from going forward on the 21st. And I see my time is about up. If you have any other questions, I'll be happy to answer them. No, I think we understand your point. Thank you, Your Honor. Thank you very much. We appreciate it. Case will be submitted. Clerk may adjourn court.